**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CAROL JACKSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DIFF, LLC,

Defendant.

Case No. 2:26-cv-05478-CAS-AYP

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIFF, LLC'S MOTION TO DISMISS COMPLAINT**

Date: September 28, 2026
Time: 10:00 a.m.
Crtrm: 8D
Judge: Hon. Christina A. Snyder

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. PLAINTIFF HAS ARTICLE III STANDING .......... 1

II. PLAINTIFF'S ALLEGATIONS COMPLY WITH RULE 8 .......... 8

III. PLAINTIFF STATES CLAIMS UNDER THE ECPA AND CIPA § 631(A) .......... 9

A. The Crime-Tort Exception Applies .......... 9

B. Defendant Unlawfully Procured The Third Parties, Violating The ECPA .......... 11

C. The Third Parties Intercepted The "Contents" Of Plaintiff's Communications .......... 12

D. Plaintiff Alleges Interception "In Transit" .......... 15

E. Plaintiff Alleges Defendant Violated Clause Four Of CIPA § 631(a) .......... 16

IV. PLAINTIFF STATES A CIPA § 632 CLAIM .......... 18

V. PLAINTIFF SUFFICIENTLY ALLEGES INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIMS .......... 19

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Anderson v. Nat'l Collegiate Athletic Ass'n*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ........ 2

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 7

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ........ 17, 18

*Barker Bros. v. City of Los Angeles*,
10 Cal. 2d 603 (1938) ........ 17

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ........ 12

*Beltran v. Doctors Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ........ 9

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ........ 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 8, 14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 18

*Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*,
885 F.3d 560 (9th Cir. 2018) ........ 11

*Camplisson v. Adidas America, Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 2

*Cheung v. Slickdeals, LLC*,
2026 WL 1872831 (C.D. Cal. June 29, 2026) ........ 6

*Correia v. Lulu & Georgia, Inc.*,
2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) ........ 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 9, 17, 19

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 19

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 15

*Dawson v. Univ. of Phoenix*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026) .......... 12

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 3, 8

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) .......... 2

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) .......... 13

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 13, 16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 11, 15, 17

*Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) .......... 16

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 3, 8

*Garcia v. Anschutz Entertainment Group, Inc.*,
832 F. Supp. 3d 993 (C.D. Cal. 2026) .......... 3

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 2, 7

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149 (C.D. Cal. 2026) .......... 10

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ............................................3, 11, 19, 20

*Gliksman v. Healthline Media, LLC*,
2026 WL 1908082 (N.D. Cal. July 2, 2026)..........................................................5

*Gray v. Luxottica of America*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ......................................................14

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ......................................................18

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025)..........................................................9

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ......................................................3, 6

*Hassid v. Alex & Ani LLC*,
816 F. Supp. 3d 1196 (C.D. Cal. 2026)..................................................................3

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................................18

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) ................................................................19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3rd Cir. 2015)...............................................................................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................21

*In re Meta Android Priv. Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026) ........................................................3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................13

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ................................................................15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................13, 14

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........................................................8, 9, 14

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)........................................................14

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........................................................5, 10

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)........................................................6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................21

*Magliocca v. United Healthcare Servs., Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026) ........................................................6

*Manier v. Triple Lift, Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ........................................................20

*Mikulsky v. Bloomingdale's LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024)........................................................14

*Mikulsky v. Bloomingdale's LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) ........................................................14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)........................................................7

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........................................................18

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........................................................7

*Myers v. Dick's Sporting Goods, Inc.*,
2026 WL 1045528 (E.D. Cal. Apr. 17, 2026)........................................................7

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ........................................................8

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)........................................................11

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026) ........................................................21

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)..........................................................................6, 7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)...........................................................10, 11

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .........................................................10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ...............................................................16

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024)................................................................15

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ..........................................................6

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024).................................................................17

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025).........................................................11

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ............................................................7

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).......................................14, 15, 16, 17

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)...........................................................16, 17

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................................16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..................................................................................................1

*Valentine v. WideOpen West Finance, LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ...........................................................................12

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 15

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ........ 20

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 14

**STATUTES**

18 U.S.C. § 2511(1)(a) ........ 12

18 U.S.C. § 2511(2)(d) ........ 12

Cal. Civ. Code § 56.05(i) ........ 9

Cal. Pen. Code § 631(a) ........ 16, 17

Cal. Pen. Code § 632(c) ........ 18

**REGULATIONS**

21 C.F.R. § 886.5850(a) ........ 7

## INTRODUCTION

DIFF, LLC ("Defendant" or "DIFF") sells eyewear online. When Plaintiff Carol Jackson visited its website (the "Website") to buy a pair, she was having a conversation with Defendant—telling it what eyewear she was looking for and who she was. Complaint ("Compl."), ECF No. 1 ¶¶ 3, 20-35. Plaintiff expected her conversation with DIFF to be kept confidential. *See id.* ¶¶ 3, 170.

Instead, Defendant enabled and procured third parties, Google, Snap, and Pinterest (the "Third Parties") to secretly intercept Plaintiff's communications with Defendant, along with extensive identifiers tying those communications to her, without Plaintiff's consent. *Id.* ¶¶ 2, 36, 90-121, 159, 162. That pervasive, identity-linked pairing is what separates this case from the ones Defendant's Motion to Dismiss ("MTD"), ECF No. 11, strains to analogize to. As shown below, Plaintiff plausibly alleges she has a concrete injury sufficient for Article III standing and states her claims under the California Invasion of Privacy Act ("CIPA"), §§ 631(a) and 632, the Federal Wiretap Act ("ECPA"), the California constitution, and common law intrusion upon seclusion. Thus, this Court should deny Defendant's MTD in its entirety.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant argues that Plaintiff lacks Article III standing because she alleges no concrete injury. MTD at 3-8. But an intangible harm is concrete where it bears a "close relationship" to a harm traditionally actionable at common law. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021). Such harms include intrusion upon seclusion, and the "right to privacy[, which] encompasses the individual's control of information concerning his or her person[.]" *In re Facebook, Inc. Internet Tracking Litig.* ("*In re Facebook*"), 956 F.3d 589, 598 (9th Cir. 2020).

**A. The Scope Of the Interception And Linkage To Plaintiff's Identity Establish Concrete Injury**

Defendant's own authority, *Garcia v. Blackhawk Network, Inc.*, holds there are "at least two ways tracking technologies may result in highly offensive conduct": (1) the information collected may be "especially sensitive," or (2) "the scope of the collection may be so broad, … that it renders the tracking highly offensive." 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026). Plaintiff's allegations satisfy the second, which independently suffices for standing.

The Ninth Circuit has long recognized as much, holding that "[a] right to privacy encompass[es] the individual's control of information concerning his or her person," and found standing where a defendant compiled users' browsing histories into profiles without consent—expressly "no matter how sensitive" the browsing was. *In re Facebook*, 956 F.3d at 596, 598-99. *Popa* left that holding undisturbed. *See Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *1 (N.D. Cal. Sept. 30, 2025) ("*Popa* confirmed that *Facebook* remains good law.").

Courts in this Circuit accordingly find standing on ordinary commercial websites, even where nothing intrinsically sensitive is collected. In *Camplisson v. Adidas America, Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025), an apparel retailer argued, as Defendant does here, that *Popa* foreclosed standing absent sensitive data. The court disagreed. Where trackers "collected a broad set of [plaintiffs'] personal identifying and addressing information without their consent," the claim "maintains a violation of privacy, particularly in the control of their own information." *Popa* was "distinguishable … where the collection of Plaintiffs' information concerns their person, is much broader in scope." *Id.*

Other courts agree. *See, e.g.*, *Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519, at *5 (C.D. Cal. Mar. 25, 2026) (collecting cases) (finding standing where a sports association website collected, *inter alia*, IP addresses, device information, digital identifiers, and session data, because the information was not private resulting

in the loss of control over that information); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865-66 & n.5 (N.D. Cal. 2025) (finding standing where consumer-product websites deprived the plaintiff of "control of personal information regarding his digital activity and profile," and declining to decide at the pleading stage whether that information was "personal or sensitive"); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1-2 (N.D. Cal. Jan. 29, 2026) (finding standing where trackers built "comprehensive user profiles" synced with data brokers and "auctioned to potential advertisers," inflicting "the loss of the ability to control information"); *Garcia v. Anschutz Entertainment Group, Inc.*, 832 F. Supp. 3d 993, 999-1000 (C.D. Cal. 2026) (finding standing where a ticketing website disclosed "browsing history, visit history, website interactions, user input data, demographic information" and shopping data, resulting in loss of "ability to control information about [her]self"); *Hassid v. Alex & Ani LLC*, 816 F. Supp. 3d 1196, 1200-01 (C.D. Cal. 2026) (finding standing on a jewelry website where trackers "collect[ed] personalized information" and rejecting the argument that no "sensitive, intimate, or private facts" were collected); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) (largely same, as to restaurant websites).

Plaintiff alleges such interception here, making her harm the loss of control over her information (*i.e.* an intrusion upon seclusion). *See* § V. Defendant configured the tracking technologies to wiretap a broad set of information about Plaintiff's visit and to tie the information to her identity.

*Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) is instructive—analyzing intrusion upon seclusion and standing together, the court found a concrete injury where the plaintiff alleged defendant's "unauthorized widespread tracking and data collection, allow[ed] it to compile detailed profiles of each Plaintiff's online web browsing activity tied to their email address and other personal identifiers" and continuous tracking on future site browsing. *See also In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *4 (N.D. Cal. May 11, 2026)

(alleging "Meta extensively collects browsing data[,]" linking the data to profiles and Meta accounts, and finding this "sufficient to plead standing, [] based on alleged harm like intrusion upon seclusion").

The same finding is supported here because Plaintiff details how Defendant enabled the Third Parties to pair her Website communications with her identity, to build profiles and cross-site tracking, even if not logged into the Third Parties' accounts.

**The Complaint does not describe the trackers in the abstract; it reproduces the transmissions themselves, following a purchase from the first page view to the register.** Each of the Third Parties received the product category the visitor selected and the filters she applied to narrow it—frame shape, lens type, and color. Compl. ¶¶ 56, 67, 78. Each received: the particular frame she opened and every change of colorway she made, (*id.* ¶¶ 57-58, 68-69, 79-81), the contents of her cart as she assembled it, transmitted on the "add to cart" event, (*id.* ¶¶ 59, 64, 70, 75, 82, 86), and followed her to the cart and checkout pages, (*id.* ¶¶ 63, 74, 86-87).

**The trackers identify visitors.** Google Analytics "identifies an individual user" through "reporting identit[ies]" assembled from a persistent "User-ID," "user-provided data" such as "email, phone, name and address," and a "device ID" drawn from the _ga cookie. Compl. ¶ 43. The Pinterest tag "matches conversion data with the person responsible for the conversion," *id.* ¶ 47, using an "external ID" that identifies "a single user" and "hashed information that customers have provided via form fields," including "emails, first and last names, [and] phone numbers," *id.* ¶¶ 49-50. And Defendant configured the Snap Pixel's "Automated Matching" to "detect and send Snap information about [] customers such as information from forms on [a] website," *id.* ¶ 52, and to collect "user parameter[s]" for "PII matching," *id.* ¶ 121—so that at checkout Snap received "u_hem" (hashed email address), "u_hpn" (hashed phone number), "u_fn" (hashed first name), and "u_ln" (hashed last name), *id.* ¶¶ 88-89.

**The identifiers persist over time and across websites.** Several of these cookies live on a visitor's browser for a year or more, and several are built to follow users elsewhere: _ga is "used to identif[y] users" for two years, *id.* ¶ 93; _Secure-3PSIDCC and _Secure-3PSIDTS are "used to create a user profile," *id.* ¶ 100; and Snap's sc_at is "[u]sed to identify a visitor across multiple domains," *id.* ¶¶ 113, 93-100, 112-119. Defendant's answer—that Plaintiff "does not allege that she is a Google, Snap, or Pinterest user," MTD at 3—misreads the Complaint—alleging that these cookies transmit even when *not* logged in, *id.* ¶¶ 101, 110, 120, and that Pinterest's _pinterest_ct_ua cookie exists precisely to "group[] actions for users who cannot be identified," *id.* ¶ 108. Nor does hashing defeat identification; hashed values remain "traceable to individuals," *id.* ¶ 43 n.19, and courts reject the pseudonymization defense on such allegations. *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 864 (N.D. Cal. 2026); *Gliksman v. Healthline Media, LLC*, 2026 WL 1908082, at *5 (N.D. Cal. July 2, 2026).

**Defendant's other factual counterarguments are unavailing.** Defendant argues Plaintiff's harm is insufficiently concrete because she does not allege "the pages she viewed and buttons she clicked on the Website." MTD at 5. But Plaintiff alleges she "visited the Website. … [and] browsed for and purchased eyewear." Compl. ¶ 3. She details the Third Parties' interceptions as they occurred for herself and all Website visitors: "[u]nbeknownst to ***Plaintiff*** and Class Members, … Defendant … enables the Third Parties to eavesdrop on their confidential Website communications using the Third Parties' wiretaps, **as set out *infra***." *Id.* ¶ 21 (emphasis added). Because Plaintiff alleges she made a purchase (*id.* ¶ 3) and that the Third Parties' software was on the Website (*id.* ¶ 36), the Third Parties necessarily intercepted Plaintiff's product selection communications (*see id.* ¶¶ 54-89) and tied them to her (*see id.* ¶¶ 90-121).

Defendant also speculates that Plaintiff "*may have* used the 'Express checkout' option, which *appears* to require her to provide no identifying information at all."

MTD at 3 (emphasis added). That is an inference drawn in Defendant's favor, but here the Court must instead "draw all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Nothing on the face of the Complaint suggests that Plaintiff checked out anonymously.[1] Nonetheless, the cookies discussed above identified Plaintiff regardless of what she entered at checkout. *See supra*.

***Popa* and Defendant's remaining authorities do not support dismissal.** *Popa* concerned session-replay software on a single website, which generated "a video replay of the user's behavior on the website and provide it to [the website owner] for analysis." 153 F.4th at 787. Nothing was disseminated beyond the site operator's own use. *See Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026). Here, three advertising platforms received Plaintiff's communications, each with "the capability to use the contents of conversations they collect … for their own purposes." Compl. ¶¶ 38-39, 53.

Further, the data in *Popa* was anonymous *because the website was configured to make it so*—masking software "omitted the street number and zip code." 153 F.4th at 786-87 & n.1. Defendant configured its Website in the opposite way, such that data was identifiable rather than anonymous. Compl. ¶¶ 43, 47-53, 90-121.

In Defendant's remaining cases, the complaint failed to identify what the defendant collected from the named plaintiff and how it was tied to her. *See Cheung v. Slickdeals, LLC*, 2026 WL 1872831, at *9-10 (C.D. Cal. June 29, 2026) (complaint "fail[ed] to specify what personal information about plaintiff Harris defendant *actually* obtained"; Cheung, who pleaded specifics, had standing); *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ("bare allegation that she visited Defendant's website"); *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL

---

[1] Should the Court require it, Plaintiff can amend to allege that she used PayPal's express-pay option and that her contact information was intercepted all the same.

878694, at *4 (E.D. Cal. Mar. 31, 2026) (plaintiff "did not purchase any products, submit any forms, or provide any personal information"); *Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *2-3 (E.D. Cal. Apr. 17, 2026) (products viewed and a public IP address only); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("conclusory allegation" that she disclosed "personal information"); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851 (N.D. Cal. 2025), and *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (hypothetical examples never converted into concrete harm). Even *Garcia v. Blackhawk* dismissed because the complaint "contain[ed] few allegations about what tracking technologies were actually installed … and what [they] were capable of." 2026 WL 925028, at *6. This Complaint identifies each tracker, each cookie, its documented function and lifespan, and the transmissions themselves.

**B. Defendant's Offensiveness Argument Does Not Support Dismissal**

Defendant's second theory is that Plaintiff shopped for "non-sensitive "products," making its use of third-party tracking technologies "'routine commercial behavior'" rather than a "'highly offensive' intrusion." MTD at 1, 4, 7-8. But *Popa* asks after "the kind of harm and not the degree," 153 F.4th 784, 790 (9th Cir. 2025), and it concerned a plaintiff's "pet-store preferences" and "street name," neither of which implicated "any sensitive sphere." *Id.* at 791-92. Conversely, Defendant sells "prescription and non-prescription eyeglasses, as well as sunglasses," and organizes its catalog around vision needs. Compl. ¶¶ 4, 20. Federal law classifies even nonprescription sunglasses as ophthalmic therapeutic devices. 21 C.F.R. § 886.5850(a). Plaintiff need not contend her purchase disclosed a diagnosis. The point is narrower: courts assessing concreteness consider what a defendant's website is for, and the character of Defendant's offerings does not favor dismissal. *See Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026); *Garcia*, 2026 WL 925028, at *4.

Moreover, whether the intrusion was highly offensive is not a question for the pleading stage. "[T]he ultimate question of whether [a defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *In re Facebook*, 956 F.3d at 606. Courts likewise "regularly refuse to decide at the pleading stage whether information like that which [a plaintiff] identifies meets the bar for 'personal or sensitive' information," because that argument "is intertwined with the merits." *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 866 n.5 (N.D. Cal. 2025); *accord de Ayora*, 2025 WL 3707561, at *3.

What Plaintiff alleges is not a store clerk noticing a busy aisle. It is the equivalent of an unseen third party acting without Plaintiff's consent, tracking her entire path from homepage, to product selection, to checkout, and being slipped her name, email, phone number, and the products she purchased the moment she reached the register. This is a wide-reaching, sensitive collection and a concrete injury. Thus, Defendant's Rule 12(b)(1) motion should be denied.

## II. PLAINTIFF'S ALLEGATIONS COMPLY WITH RULE 8

Defendant argues Plaintiff "alleges no facts connecting" what it deems "generalized allegations" to "her own activities[.]" MTD at 9. But "courts have rejected" the position that "[p]laintiffs must plead the exact communications they had with the [d]efendant]" under CIPA.[2] *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023). Especially here where Plaintiff's communications were necessarily intercepted because she made a purchase. *See infra* § I. (citing Compl. ¶¶ 3, 21, 36, 54-89, 90-121); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) (allegations of use of session replay necessarily meant all information the plaintiff input was intercepted.)

---

[2] Courts analyze Plaintiff's CIPA § 631(a) and ECPA claims together because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

As detailed in § I., Plaintiff's allegations of interception tie to her specifically, not to a hypothetical user. Compl. ¶¶ 3, 21, 36, 54-89, 90-121. Nothing more is required. *See James*, 701 F. Supp. 3d at 956.

Defendant relies on cases where plaintiffs alleged Cal. Civ. Code § 56.05(i) claims, which strictly defines medical information. MTD at 9–10 (citing *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025); *Beltran v. Doctors Med. Ctr. of Modesto*, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025); *Cousin v. Sharp Healthcare* ("*Cousin I*"), 681 F. Supp. 3d 1117 (S.D. Cal. 2023)). "The overarching theory" in these cases concerned disclosure of protected health information, thus, alleging the information was protected health information was critical. *See Harrill*, 2025 WL 1635428, at *4; *Beltran*, 2025 WL 1635467, at *6. Plaintiff need not plausibly allege any particular type of communication was intercepted, so Defendant's authorities are inapposite and dismissal under Rule 8 is unwarranted.

## III. PLAINTIFF STATES CLAIMS UNDER THE ECPA AND CIPA § 631(a)

Defendant raises overlapping challenges to both the ECPA and CIPA § 631(a) (MTD at 12-16), all of which fail.[3]

### A. The Crime-Tort Exception Applies

Defendant argues that because "DIFF consented to its own use of third-party technology for marketing and analytics purposes on its Website … Plaintiff has no FWA claim[,]" that Plaintiff's invocation of the crime-tort exception does not overcome Defendant's consent because Plaintiff did not allege a crime or tort independent from the wiretapping, and "the crime-tort exception is not available whenever a defendant was motivated by profit." MTD at 10-12.

[3] Plaintiff brings a CIPA § 631 clause four claim against Defendant, and not clause one.

*First*, Plaintiff alleges Defendant had the "purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy and violation of the CIPA, among others." Compl. ¶ 148. Thus, Plaintiff's California constitutional invasion of privacy and intrusion upon seclusion claims independently satisfy the crime-tort exception. *See* § V.; *Krzyzek*, 817 F. Supp. 3d at 869 ("plaintiffs adequately alleged invasion of privacy, the Court is not convinced that ECPA's crime-tort exception does not apply"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (same).

*Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149 (C.D. Cal. 2026) is instructive. There, the plaintiff sufficiently alleged that the purpose for the interception was to commit a tortious invasion of privacy where:

> [Defendant] "*chose* to embed the LinkedIn Insight Tag" ... and, with this tag, then disclosed to LinkedIn sensitive and confidential information provided by consumers, .... Therefore, when viewing the facts in [the plaintiff]'s favor, … [plaintiff] has plausibly alleged that [defendant]'s purpose was, at the very least, tortious, thereby satisfying the crime-tort exception.

*Id.* at 1166.

*R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) provides further clarity, finding the violation at issue "stems from [the defendant's] intentional *disclosure* of the collected [information], which constitutes a 'further impropriety' independent and separate from [defendant's] *interception*." 2025 WL 103488, at *6. Here too, Plaintiff alleges Defendant "disclosed, and endeavored to disclose" to Third Parties "the contents of the electronic communications of Plaintiff and Class Members." Compl. ¶ 141; *see also id.* ¶ 144, 180–181. Defendant's intent to disclose therefore "is distinct from the interception itself" and the timing is immaterial where "[the defendant]'s purpose remained the same at the time of the interception." *Prime Healthcare*, 2025 WL 103488, at *6. That purpose was the same

here: to disclose Plaintiff's sensitive, personally identifiable information to the Third Parties in violation of her right to privacy. *See* Compl. ¶ 144.

Defendant's reliance on *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) is misplaced. The plaintiff there did not "allege that th[e] [defendant's] purpose constitutes independently illegal or actionable conduct[.]" *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) does not require otherwise—having not reached whether a claim for invasion of privacy satisfied the crime-tort exception, because the plaintiff failed to state an intrusion upon seclusion claim, unlike Plaintiff (§ V).

*Second*, Defendant's argument that the crime-tort exception does not apply because its motive was merely monetary (MTD at 11-12) fails. "[A] monetary purpose does not insulate a party from liability under the ECPA." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) (rejecting case law on which Defendant relies); *accord Gilligan*, 2026 WL 32259, at *3 ("being primarily motivated to make money does not preclude application of the crime-tort exception"); *R.C.*, 733 F. Supp. 3d at 901 ("[E]ven where … motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged … [defendant] violated state law, including state law privacy claims.")

### B. Defendant Unlawfully Procured The Third Parties, Violating The ECPA

Defendant's argument ignores that Plaintiff pleads Defendant unlawfully *procured* the Third Parties to intercept the communications at issue, as a separate violation of the ECPA. Compl. ¶ 139. Thus, any challenge to Plaintiff's procurement theory of liability is waived. *See Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018) ("Inadequately briefed and perfunctory arguments are also waived").

The ECPA provides for liability against anyone who "intentionally intercepts, endeavors to intercept, *or procures* any other person to intercept or endeavor to

intercept, any … electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added). Plaintiff alleges Defendant procured the Third Parties to intercept Plaintiff's communications. Compl. ¶¶ 2, 3, 139, 141-42.

Courts examining the ECPA's text and legislative history have held that the ECPA provides for such civil liability. *See Dawson v. Univ. of Phoenix*, 2026 WL 92248, at *14 (N.D. Ill. Jan. 13, 2026); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *5-6 (E.D. Cal. Jan. 7, 2020); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 412, n.3 (N.D. Ill. 2012); *Doe 1 v. Scripps Health*, No. 3:23-cv-02215-AGS-DEB (S.D. Cal.) (Schopler, J.), ECF No. 43 (Oral Mot. to Dismiss Ruling) (Exhibit A to Ines Diaz Villafana Declaration).

The ECPA's party exemption does not reach procurement. By its terms, "[i]t shall not be unlawful … for a person … *to intercept* a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties has given prior consent to such interception." 18 U.S.C. § 2511(2)(d) (emphasis added). It says nothing about procuring. "[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (cleaned up). Congress imposed liability on entities, like Defendant, that procure others to intercept communications, § 2511(1)(a), but omitted those entities from the exemption, § 2511(2)(d), "intentionally and purposely."

**C. The Third Parties Intercepted The "Contents" Of Plaintiff's Communications**

Defendant argues Plaintiff's CIPA clause two and ECPA claim fail because the intercepted information—*i.e.*, the back-and-forth interactions between Defendant and its customers in the process of customizing their eyewear—does not qualify as the "contents" of communications and is instead "[n]on-actionable 'record information'".

*See* MTD at 13 (cleaned up). Not so. Plaintiff and other users' interactions with Defendant's website qualify as contents of communications because they convey an "intended message to another." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The Complaint illustrates the typical conversation between Defendant and its users, including Plaintiff. Compl. ¶ 21. Defendant asks users to select a product category and choose a frame. *Id.* ¶¶ 23-25 (Screens 1-3). Defendant then asks for a lens type— "single vision," "reading," or "progressive"—and the purpose ("everyday use," "digital screens," "photochromic"), each answer revealing something about the user's vision, health, or activity needs. *Id.* ¶¶ 26-27 (Screens 4-5). Next, Defendant asks users who select a prescription lens to upload or retrieve their prescription. *Id.* ¶ 29 (Screen 7). Finally, Defendant asks users to enter their name, email, and phone number at checkout. *Id.* ¶ 35 (Screen 14). Users respond at each stage, equating to "users affirmatively entering, and interacting with, information on the Website[,]" which the Third Parties capture. *Id.* ¶¶ 22, 54-89.

When a consumer uses Defendant's website, she communicates with it just as she would with an optician fitting her for glasses. Such messages do not lose their communicative character simply because they are expressed through a button click as opposed to a vocal cord. "[T]he names of buttons clicked on websites and their associated URLs" can qualify as "'content[s]' [of communications] within the meaning of the statute." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). So, an interaction like clicking "the log-in buttons" to healthcare websites "are 'contents'…. because they concern the substance of a communication." *Id.* at 795-96; *see also Doe I v. Google LLC*, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025) (clicking "'bill pay' would seem to be the content of a communication").

Even *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1115 n.5 (N.D. Cal. 2025)—a case Defendant relies on (MTD at 13-14)—notes that "clicking on the 'For Me' button under the prompt 'I am reaching out'" likely "satisf[ies] the 'contents

of communication' requirement." Just as those users communicated desire to log into their patient portal, or pay their bill, Defendant's users communicate "sensitive, personally identifiable information relating to eyewear purchases," including which frames, lens types, and even any prescription details they wish to select. Compl. ¶ 2.

The Ninth Circuit in *Mikulsky v. Bloomingdale's LLC*, held the district court "erred in dismissing Mikulsky's claim" where the complaint "alleged real-time capture of the contents of Mikulsky's communications on Defendants' website"—including "products viewed or placed in website visitors' 'carts' or 'wish lists,' and 'data entered into text fields but not 'submitted' by the visitor.'" 2025 WL 1718225, at *1 (9th Cir. June 20, 2025), *rev'g* 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024). Courts agree. *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) ("*In re Zynga Priv. Litig.*, 750 F.3d 1098, and *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020), … are not the contrary."); *James*, 701 F. Supp. 3d at 955-56; *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (finding "'detailed URL request[s], form field entries like email address and name, button clicks and associated text, and the title of videos that the subscribers asked the subject websites to deliver'" were contents); *Gray v. Luxottica of America*, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) ("The PageView event ... contains a full-string, detailed URL with the terms 'eye-exam' and 'reschedule.' …. Plaintiff has 'plausibly conveyed contents.'").

Defendant argues "Plaintiff fails to identify *any* communication" and "at most, she clicked on links for unidentified products, … and made 'button clicks' … which courts have consistently rejected as non-actionable 'record information.'" MTD at 13. But *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4-*5 (E.D. Cal. June 9, 2025) acknowledged that, "'descriptive URLs that reveal specific information about a user's queries' may reflect the 'contents' of communications under CIPA," (cleaned up), and granted leave to amend because the plaintiff had not "identif[ied] with specificity what information she provided on Defendant's Website." At most,

*King* requires pleading which specific communications were intercepted—an argument other courts reject. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific … sensitive contents of the communications they say were intercepted"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3rd Cir. 2015) ("this scheme, if it operated as alleged, involved the collection of at least some 'content[.]'").

**D. Plaintiff Alleges Interception "In Transit"**

Defendant argues Plaintiff's ECPA and CIPA § 631(a) clause two claims fail because she does not allege that her communications were intercepted "'in real time' and while 'in transit.'" MTD at 14. But Plaintiff "did not simply recite that there was real time interception, she added detail on how it occurs," through the various code Defendant embedded on its website (Compl. ¶¶ 36-37, 40, 45-46, 51). *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023). Plaintiff also "pointed to statements from" the Third Parties themselves regarding real-time capture: Google's code fires "[e]very time a user visits a webpage"; Snap's code "'track[s] the actions" users "take while browsing"; and Pinterest's tag captures events "[w]hen someone takes an action." Compl. ¶¶ 40-41, 45-46, 51. Moreover, the Complaint alleges these transmissions occur "simultaneously," "at the same time as they are being sent to Defendant[,]" "within milliseconds." Compl. ¶ 37.

The pleading standard Defendant demands does not exist. "At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured," because that information "resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *St. Aubin*, 2024 WL 4369675, at *6; *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Instead, "[c]ourts have held allegations of simultaneous duplication and interception of communications sufficient to plead 'interception' while 'in transit.'" *Tenet*, 789 F. Supp. 3d at 838 (collecting cases); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp.

3d 1208, 1228 (C.D. Cal. 2024) (Snyder, J.); *Correia v. Lulu & Georgia, Inc.*, --- F.Supp.3d ----, 2026 WL 2343093, at *5 (S.D. Cal. Aug. 12, 2026).

Defendant further points to *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) and *Eating Recovery*, 806 F. Supp. 3d 1109 to argue Plaintiff must allege the Third Parties "*reads or attempts to read* the contents of the contents of the communication *while they are in transit*." MTD at 14-15 (citing 2025 WL 1135088 at *5). But both cases were decided at summary judgment, illustrating the impropriety of Defendant's Rule 12 arguments. *See id.* For example, *Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) also involved the Meta Pixel (like *Eating Recovery*) yet, the court denied summary judgment on the issue of "whether Meta's interception occurred while the communications were 'in transit.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) likewise observed that *Torres* illustrates "whether communications are 'read' in transit or only after storage is a fact-intensive question" dependent on "how the challenged technology and processes actually work—a question *Torres* decided only after a full evidentiary record at summary judgment."

**E. Plaintiff Alleges Defendant Violated Clause Four Of CIPA § 631(a)**

Defendant argues that Plaintiff "cannot show DIFF is liable for aiding and abetting" the Third Parties. MTD at 15. But "[t]he statute as worded does not include an intent standard." *St. Aubin*, 2024 WL 4369675, at *7. Asking Plaintiff to plead that Defendant "kn[e]w that [the third-party] was allegedly violating section 631(a) … goes beyond what the statute requires." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025).

Instead, the text of the fourth clause of § 631(a) imposes liability when a person "aids, agrees with, employs, or conspires with any person" to violate the statute. Cal. Pen. Code § 631(a) (emphasis added). That clause is disjunctive due to the use of "or".

*Barker Bros. v. City of Los Angeles*, 10 Cal. 2d 603, 606 (1938). Defendant is liable if it did any of those actions.

"The plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a party aid *and* abet." *Tate*, 762 F. Supp. 3d at 959. Thus, "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Id.* "Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause." *Cousin I*, 681 F. Supp. 3d at 1130; *accord St. Aubin*, 2024 WL 4369675, at *8; *Tenet*, 789 F. Supp. 3d at 839.

Plaintiff's allegations that Defendant installed and configured the tracking technologies for "targeted marketing based on an analysis of the intercepted communications" (Compl. ¶¶ 40-53, 141-42) "are sufficient to plead that [DIFF] either aided, agreed, employed, or conspired with [the third parties] in the alleged interception of their information and data …." *Tenet*, 789 F. Supp. 3d at 839-40 (citing cases).

Defendant cites *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024). MTD at 16. But "Defendant's reliance on *Rodriguez* is misplaced, where as there, the "plaintiff [did] not allege that Defendant knew that [the eavesdropper] was using the chat data beyond storing it for Defendant." *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *12 (N.D. Cal. Sept. 16, 2025) (quoting *Rodriguez*, 722 F. Supp. 3d at 1124). By contrast, Defendant intentionally installed the Third Parties' software (Compl. ¶ 36), to increase its number of customers through targeted marketing based on an analysis of the intercepted communications (*id.* ¶¶ 141, 151), and these allegations suffice. *See, e.g.*, *Tenet*, 789 F. Supp. 3d at 839 (finding allegations that "Defendants chose to install Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants assisted Meta with intercepting the PHI and PII of Defendants' patients without their authorization" sufficient at the motion to dismiss

stage); *Balestrieri*, 2025 WL 2776356, at *12 (explaining that "[a]llegations that a defendant intended to collect and disclose information" suffice).

## IV. PLAINTIFF STATES A CIPA § 632 CLAIM

Defendant argues Plaintiff has not alleged "the recording of a 'confidential' communication" under CIPA § 632 because "[c]ourts in California have developed a presumption that Internet communications do not reasonably give rise to that expectation [of confidentiality]." MTD at 16 (cleaned up).

Defendant is wrong and this exact argument was rejected in *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024):

> Section 632 makes no exception on its face for communications over the Internet, or in the "Internet Age," meaning that there is no requirement that Plaintiff allege something 'unique' about her particular Internet communications in order to make them private/confidential.

CIPA "Section 632 protects against 'intentional, nonconsensual recording' of communications 'regardless of the content of the conversation' involved or how parties choose to disseminate it thereafter." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (citation omitted). "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.* at 937 (citing Cal. Pen. Code § 632(c)).

Here, Defendant has not proffered that it sought Plaintiff's consent via a cookie banner nor any other privacy mechanism when she visited the Website and browsed for and purchased eyewear. *See generally* MTD. To the contrary, Plaintiff clearly alleges that she intended the communications be confined to her and Defendant. *See, e.g.*, Compl. ¶¶ 2, 3, 159, 162.

Defendant's remaining authority is inapposite. *Hubbard v. Google LLC* does not concern CIPA and "is not a case involving secret or deceptive data collection[.]" 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). *Griffith v. TikTok, Inc.*, 2024 WL

5279224, at *3-7 (C.D. Cal. Dec. 24, 2024) was decided on summary judgment where plaintiffs "failed to produce evidence that Defendants collected sensitive information"—if anything, supporting Plaintiff's entitlement to discovery. And *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 899 (N.D. Cal. 2026) concerned a defendant collecting data from its *own first-party applications* and distinguished cases like this concerning "third-party tools used for intercepting an alleged communication between a user and the intended recipient." *Id.*

## V. PLAINTIFF SUFFICIENTLY ALLEGES INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIMS

Defendant argues Plaintiff cannot satisfy her privacy claims because she has not alleged a "reasonable expectation of privacy" or "highly offensive" conduct. MTD at 17-18. This argument fails for three reasons.

*First*, whether Plaintiff had a reasonable expectation of privacy and whether Defendant's conduct was highly offensive are fact-bound questions unsuited to resolution at the pleading stage. *See In re Facebook*, 956 F.3d at 606 ("The ultimate question of whether [a defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."). Tellingly, Defendant relies on *Cousin I*, 681 F. Supp. 3d at 1126, for the proposition that disclosing browsing history is "'routine commercial behavior'" and "not 'highly offensive.'" MTD at 18. But on the amended complaint the same court held that whether an intrusion is highly offensive is "not capable of resolution, on these facts, at the motion to dismiss stage," and denied dismissal on that basis. *Cousin v. Sharp Healthcare* ("*Cousin II*"), 702 F. Supp. 3d 967, 973-74 (S.D. Cal. 2023).

*Second*, Plaintiff had a reasonable expectation of privacy over her personally identifiable communications. As the Ninth Circuit held in *In re Facebook*, "allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy." 956 F.3d at 606. Likewise, in *Gilligan*, 2026 WL

32259, at *2 (N.D. Cal. Jan. 6, 2026), the court found similar data collection practice allegations "satisfy the requirement for a 'highly offensive' intrusion that invades reasonable internet users' expectations of privacy."

California's statutory privacy regime reinforces Plaintiff's reasonable expectation of privacy. The California Consumer Privacy Act ("CCPA") "requires that companies give users the choice to opt out of any collection of personal information for 'cross-context behavioral advertising[.]'" *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1132 (N.D. Cal. 2025). Its provisions are "highly relevant 'customs, practices, and circumstances,'" because they provide Californians "the reasonable expectation that they will have some control over their data" and shape their expectations about being able to opt out of data collection for profit. *Id.* (citing *In re Facebook*, 956 F.3d at 602). "Cases decided *prior* to the 2020 adoption of the CCPA are thus of limited value in considering users' reasonable post-enactment expectations." *Id.* at 1132 (emphasis in original). "Today, when California users visit a website, they can expect to see a popup screen giving them the option to opt out of various types of tracking." *Id.* Defendant gave Plaintiff no such choice. As a California consumer, she could thus expect that her communications would remain confidential and not be disclosed or intercepted with her personally identifiable information.

*Third*, Plaintiff alleges highly offensive conduct: Defendant enabled the Third Parties to covertly intercept Plaintiff's communications, pair them with her identity, and compile them into cross-site profiles. *See* Compl. ¶¶ 90-121. Allegations of this kind have repeatedly survived dismissal. In *Manier v. Triple Lift, Inc.*, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026), trackers intercepted the plaintiff's "IP address, device information, browsing activity, and persistent user identifier," *id.* at *1, and the court allowed the intrusion upon seclusion and invasion of privacy claims to proceed. *Id.* at *5-6; *see also Gilligan*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (same). Plaintiff's allegations likewise support finding defendant's conduct was highly offensive. As discussed in §I, the Third Parties identify visitors, match

their communications to them, and follow them across the internet. *See* Compl. ¶ 100 (alleging Google cookies "'create a user profile'"); *id.* ¶ 91 (alleging Google's persistent cookies can "'track user behavior across different sites'"); *id.* ¶ 106 (alleging Pinterest cookie registers "'a unique ID that identifies and recognizes the user'"); *id.* ¶¶ 113–120 (alleging Snap cookies are "'[u]sed to identify a visitor across multiple domains'" and set a "'unique ID to enable targeted advertising and facilitate real-time bidding from third-party advertisers'").

Defendant's contrary authorities do not support dismissal. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) predate *In re Facebook* and are distinguishable. In *Low*, it was unclear "that anyone ha[d] actually" de-anonymized the data "or what information" the "third parties ha[d] obtained." 900 F. Supp. 2d at 1025. *In re iPhone* concerned geolocation data "generated automatically, rather than through the intent of the user," 844 F. Supp. 2d at 1063, while Plaintiff's communications "are the product of [her] affirmatively entering, and interacting with, information on the Website." Compl. ¶ 22. Finally, *Perez v. Romantix Online, Inc.*, 2026 WL 1802589 (N.D. Cal. June 23, 2026), turned on consent: the site's popup stated "[b]y using [the site], you consent to all cookies," and the court dismissed the claims for "conduct preceding" the plaintiff's clicking "Decline All" cookies. *Id.* at *1, *3 (cleaned up). Here, Defendant offered no popup and no opportunity to consent or decline, so *Perez*'s consent-based dismissal has no application.

## CONCLUSION

For these reasons, Plaintiff asks this Court to deny Defendant's MTD. Should the Court grant any part of Defendant's MTD, Plaintiff respectfully requests leave to file an amended complaint.

Dated: August 24, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: <u>/s/ *Ines Diaz Villafana*</u>

Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Carol Jackson certifies that this brief contains 6,815 words, which complies with the 7,000-word limit of L.R. 11-6.1.

By: /s/ *Ines Diaz Villafana*
Ines Diaz Villafana