UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-05478-CAS-AYPx | Date | October 19, 2026 |
| Title | Carol Jackson v. Diff, LLC | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Amy Diaz | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Nines Villafana | Rebekah Guyon |

**Proceedings:** DEFENDANT DIFF, LLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) (Dkt. 11, filed on July 27, 2026)

## I. INTRODUCTION

On May 21, 2026, plaintiff Carol Jackson ("plaintiff"), individually and on behalf of others similarly situated, filed a class action complaint against defendant DIFF, LLC ("defendant" or "DIFF"). Dkt. 1 ("Complaint" or "Compl."). Plaintiff asserts five claims for relief: (1) violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; (2) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a); (3) violation of the California Invasion of Privacy Act, Cal. Penal Code § 632; (4) invasion of privacy pursuant to the California Constitution; and (5) intrusion upon seclusion. Id.

On July 27, 2026, DIFF filed the instant motion to dismiss for lack of standing and failure to state a claim. Dkt. 11 ("Mot."). On August 24, 2026, plaintiff filed an opposition. Dkt. 15 ("Opp."). On October 5, 2026, DIFF filed a reply. Dkt. 18 ("Reply").

On October 19, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. DIFF's Eyewear Retail Website and Plaintiff's Purchase

DIFF is an eyewear company that "designs, manufactures, and sells prescription and non-prescription eyeglasses, as well as sunglasses directly to consumers" through its

website, diffeyewear.com (the “Website”). Compl. ¶ 4. Plaintiff alleges that, on or around October 9, 2025, she visited the Website, where she “browsed for and purchased eyewear.” Id. ¶ 3.

Plaintiff alleges that Website users can “browse and purchase prescription and non-prescription eyewear,” including “glasses and sunglasses featuring progressive, reading, blue light-filtering, and other lens types.” Id. ¶ 20. Upon visiting the Website, “users encounter a banner prompting them to select a product category,” such as eyeglasses or sunglasses. Id. ¶ 23. Users can then “browse and select eyewear” frames based on several criteria, such as “frame shape, lens type, and/or color.” Id. ¶¶ 24-25. Plaintiff alleges that users can “customize their glasses” by selecting lens types, such as single vision, reading, or progressive lenses, and lens purposes, such as everyday use, digital screens, or outdoor sunglasses. Id. ¶¶ 25-27. The Website also prompts users purchasing prescription glasses to upload a prescription, submit a prescription later, or retrieve previously supplied prescription information. Id. ¶ 29. Plaintiff alleges that Website users can subsequently add selected eyewear to their shopping carts and proceed to checkout by entering their “contact information (first and last name, email, phone number), shipping address, and billing details.” Id. ¶¶ 30, 34-35.

### B. Third-Party Interception of Customer Communications on DIFF’s Website

Plaintiff alleges that DIFF “aids, agrees with, employs, and otherwise enables” three third parties—Google LLC (“Google”), Pinterest, Inc. (“Pinterest”), and Snap, Inc. (“Snap”) (collectively, the “Third Parties”)—to intercept Website users’ communications through tracking technologies installed on the Website. Id. ¶¶ 2, 21, 36. According to plaintiff, the tracking technologies “cause the browser to secretly and simultaneously duplicate the user’s Website communications,” transmitting those communications to the Third Parties’ servers alongside additional information about the Website user’s identity. Id. ¶ 37. Plaintiff alleges that the Third Parties collect and analyze these communications and “have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes.” Id. ¶¶ 38-39.

Plaintiff alleges that the Third Parties’ tracking technologies collect information concerning Website users’ product selections and interactions. Specifically, Plaintiff alleges that Google, Pinterest, and Snap intercept URLs identifying the product

categories selected by users, as well as filters relating to frame shape, lens type, and color. Id. ¶¶ 54-56, 65-67, 76-78. Plaintiff further alleges that the technologies intercept information concerning the particular eyewear frames viewed, changes in frame colors, items added to shopping carts, and visits to cart and checkout pages. Id. ¶¶ 57-64, 68-75, 79-87. Plaintiff also alleges that Snap intercepts information when Website users submit contact and shipping information at checkout, including hashed email addresses, phone numbers, and first and last names. Id. ¶¶ 88-89.

Plaintiff additionally alleges that the Third Parties' tracking technologies can associate information collected from the Website with users' identities. Id. ¶¶ 43-53, 90-121. According to Plaintiff, Google Analytics identifies users through combinations of identifiers, including user IDs, user-provided data, and device IDs. Id. ¶ 43. Plaintiff alleges that the Pinterest Tag can "match[] conversion data with the person responsible for the conversion" using identifiers and hashed information provided through website form fields. Id. ¶¶ 47-50. Plaintiff further alleges that DIFF configured the Snap Pixel to collect user parameters, including hashed email addresses and phone numbers, for "PII matching." Id. ¶¶ 52, 88, 121.

Plaintiff alleges that the Third Parties also use cookies capable of identifying Website visitors and tracking their activity. Id. ¶¶ 90-121. Plaintiff describes cookies as files stored on users' devices that may be used to track behavior across websites and remember prior interactions. Id. ¶ 91. Plaintiff alleges that Google, Pinterest, and Snap deploy cookies on the Website, including persistent cookies capable of identifying users, associating activity with existing accounts on their own platforms, and tracking activity across multiple domains. Id. ¶¶ 92-120. Plaintiff also alleges that certain tracking technologies transmit cookies even when users are not logged into the accounts on the Third Parties' platforms. Id. ¶¶ 101, 110, 120.

Plaintiff alleges that, when she visited the Website and purchased eyewear, the Third Parties intercepted communications containing her "sensitive, personally identifiable information relating to eyewear purchases," without her prior consent. Id. ¶ 3. Plaintiff alleges that she expected her communications with DIFF to remain confined to DIFF and did not expect third parties to "secretly eavesdrop upon or record this information and their communications." Id. ¶ 170.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn

from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

DIFF moves to dismiss plaintiff's complaint, arguing that plaintiff's allegations fail to establish Article III standing and fail to state a claim.

### A. Standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

1. The Parties' Arguments

Here, DIFF focuses on the injury requirement. Mot. at 4-8. Specifically, DIFF argues that plaintiff lacks Article III standing because she fails to allege a concrete injury analogous to the common law tort of intrusion upon seclusion. Id. DIFF argues that plaintiff fails to identify any sensitive or private information disclosed to third parties and that the alleged collection of routine browsing information through tracking technologies is not highly offensive. Id.

In opposition, plaintiff argues that her allegations that defendant enabled the Third Parties to intercept her website communications and associate her browsing and purchasing activity with personal identifiers (thereby facilitating cross-site tracking and profiling) establish a concrete injury sufficient to confer Article III standing. Opp. at 1-8. Plaintiff further argues that the scope of the alleged collection and resulting loss of control over her personal information distinguish this case from those involving routine website analytics. Id. Plaintiff argues that whether the alleged intrusion was "highly offensive" is intertwined with the merits and should not be resolved at the pleading stage.[1] Id.

In reply, DIFF argues that plaintiff alleges only a single visit to a commercial eyewear website and fails to identify any sensitive information disclosed or conduct sufficiently intrusive to establish standing. See generally Reply. DIFF further contends that plaintiff's cited authorities involve materially different allegations of sensitive information, deceptive tracking practices, or extensive cross-site surveillance. Id.

[1] The rule prohibiting courts from resolving jurisdictional disputes intertwined with the merits applies where a Rule 12(b)(1) motion raises a factual challenge to standing. See Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 140-41 (9th Cir. 1983) (holding that the district court erred in making a factual finding and dismissing a claim under Rule 12(b)(1), where the factual jurisdictional issue was intertwined with the merits). DIFF raises no such challenge. Rather, DIFF challenges the legal sufficiency of plaintiff's allegations, which the Court may resolve on the pleadings even where the standing inquiry overlaps with the merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL 'O'**

| Case No. | 2:26-cv-05478-CAS-AYPx | Date | October 19, 2026 |
|---|---|---|---|
| Title | Carol Jackson v. Diff, LLC | | |

2. The Court's Findings

As a preliminary matter, the Court notes that standing is evaluated on a claim-by-claim basis. See Oregon v. Legal Servs. Corp., 552 F.3d 965, 969 (9th Cir. 2009) ("A plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each form of relief sought.'") (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)), abrogated in part on other grounds by Bond v. United States, 564 U.S. 211 (2011).

Here, all five of plaintiff's claims are premised on the same alleged harm: violation of plaintiff's privacy. See generally Compl. Of plaintiff's five claims, three arise under federal and state statutes, one under the California Constitution, and the remaining claim under the common-law tort of intrusion upon seclusion. Id.

Standing to assert privacy violations, even those afforded statutory protection, must be based on actual injury. "[E]ven in the context of a statutory violation," Article III standing requires that a plaintiff's privacy injury be "concrete" and "actually exist." Spokeo, Inc. v. Robins, 578 U.S. 330, 340-41 (2016). For intangible alleged injuries arising out of alleged privacy violations, courts ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." TransUnion LLC v. Ramirez, 594 U.S. 413, 424 (2021). At base, "TransUnion requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025). The analysis must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort." Id.

The parties appear to agree that the applicable common-law analogue is intrusion upon seclusion, which plaintiff has also pled as a separate claim. See generally Mot.; Opp.; Reply. Although plaintiff is not "required to prove the elements" for intrusion upon seclusion to establish concrete injury for Article III standing purposes, she must demonstrate that the harm posed by the theft of her information bears a "close relationship" to these traditionally recognized harms. I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022).

A privacy harm bears a close relationship to the common-law tort of intrusion upon seclusion when it involves pervasive, surreptitious surveillance of an individual's private affairs. See Davis v. Facebook, Inc. ("Facebook"), 956 F.3d 589 (9th Cir. 2020).

In Facebook, for example, the Ninth Circuit found a concrete injury where Facebook surreptitiously compiled comprehensive “cradle-to-grave” profiles of its users by tracking their browsing activity across third-party websites in order to sell their data to advertisers to generate revenue. Id. at 598-99. Specifically, plaintiffs alleged that Facebook tracked their online activity even after they logged out of the platform, continuously collected and updated their browsing histories, and linked that information to their personal Facebook profiles—all without their consent. Id.

By contrast, routine monitoring of consumer behavior in an ordinary commercial setting, without the collection of “embarrassing, invasive, or otherwise private information,” does not bear a sufficiently close relationship to the “highly offensive” intrusions historically actionable at common law. Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025).

In Popa, the Ninth Circuit found no concrete injury where session-replay software recorded ordinary shopping activity without collecting embarrassing, invasive, or otherwise private information. Id. There, the plaintiff alleged that Microsoft’s session-replay technology captured her interactions with a pet-supply retailer’s website, including products viewed, mouse movements, screen swipes, clicks, text inputs, webpage scrolls, and partial address information. Id. at 786-87. The Ninth Circuit likened that monitoring of the plaintiff’s interactions with the defendant’s website to “a store clerk’s observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales” id. at 791, and distinguished such monitoring from the intrusive surveillance contemplated by the Restatement for intrusion upon seclusion: “A . . . rents a room in a house adjoining B’s residence, and for two weeks looks into the windows of B’s upstairs bedroom through a telescope taking intimate pictures with a telescopic lens,” id. (citing Restatement (Second) of Torts § 652B cmt. b, illus).

Here, plaintiff’s alleged injury is more analogous to the routine commercial behavior monitoring in Popa than the pervasive surveillance in Facebook. Plaintiff alleges in her Complaint that DIFF allowed the Third Parties to intercept “communications that contained [p]laintiff’s . . . information relating to eyewear purchases.” Compl. ¶ 3. Specifically, plaintiff alleges that each of the Third Parties received the product category she selected and the filters she applied to narrow it (e.g., frame shape, lens type, and color). Id. ¶¶ 56, 67, 78. Plaintiff also alleges that each of the Third Parties received information about the particular eyewear frame she opened and

every change of colorway she made, id. ¶¶ 57-58, 68-69, 79-81, and the contents of her cart as she assembled it, which were then transmitted to the Third Parties on the "add to cart" event, id. ¶¶ 59, 64, 70, 75, 82, 86; plaintiff also alleges that the Third Parties' tracking technologies followed her navigation to the cart and checkout pages, id. ¶¶ 63, 74, 86-87. Plaintiff alleges that her visit to Diff's Website occurred on or around October 9, 2025—just once. Id. ¶ 3.

As in Popa, the alleged tracking here occurred while plaintiff browsed a retail website and involved ordinary consumer interactions, including the products viewed, selections made, items added to a shopping cart, and progression through checkout. Compl. ¶¶ 54-89. Although plaintiff characterizes these interactions as sensitive communications, the specific transmissions identified in the Complaint mainly concern eyewear frames, colors, lens options, reading magnification, and purchase activity, which are more akin to consumer preferences a store clerk might observe to understand shopping patterns. See Popa, 153 F.4th at 791.

And unlike Facebook, the Complaint does not allege that DIFF monitored plaintiff's browsing activity across numerous unrelated websites or compiled a comprehensive history of her private affairs. Cf. Facebook, 956 F.3d at 598-99. Although plaintiff alleges that third-party trackers could associate information with users' identities and facilitate advertising across platforms, Compl. ¶¶ 90-121, she does not allege that those trackers actually compiled a similarly comprehensive profile of her browsing history or personal life, see generally Compl. Therefore, the alleged collection of information about an eyewear purchase here more closely resembles the ordinary retail observation found insufficient in Popa than the extensive intrusion into private affairs at issue in Facebook. Accordingly, plaintiff has not plausibly alleged a harm bearing a sufficiently close relationship to the highly offensive intrusion historically actionable at common law.

Plaintiff also alleges harm because the Third Parties allegedly intercepted personally identifiable information, including names, email addresses, phone numbers. See Compl. ¶¶ 88-89. However, courts in this Circuit routinely find that the interception of basic contact information does not trigger a sufficiently private interest. See, e.g., Mikulsky v. Noom, Inc., 682 F. Supp. 3d 855, 860, 864 (S.D. Cal. 2023) ("[M]ere[] information akin to basic contact information" does "not trigger a protectable privacy interest."); Merical v. The Joint Corp., 2026 WL 2225531, at *1, *12-13 (E.D. Cal. Aug.

3, 2026) (allegations that "[t]racking [t]echnologies" acquired plaintiff's "unhashed email address, phone number, and full name" as well as her "choice of [chiropractic] clinic" after a "one time" visit to defendant's website "failed to allege a violation of a cognizable privacy interest").

To the extent that plaintiff emphasizes that DIFF sells prescription eyewear and prompts purchasers of prescription eyewear to upload their prescription to complete the purchase, plaintiff's effort to implicate a privacy interest fails for two reasons.

First, plaintiff does not allege facts connecting her own website activity to the interception of any prescription-related information. Although the complaint describes how website users can select and upload prescription information, plaintiff does not allege that she herself purchased prescription glasses or uploaded any prescriptions.[2] See Compl. ¶¶ 26-29. Rather, plaintiff alleges only that she "browsed for and purchased eyewear." Compl. ¶ 3. Similarly, although plaintiff argues that federal law "classifies even nonprescription sunglasses as ophthalmic therapeutic devices," Opp. at 7, she does not allege that she purchased or browsed sunglasses. Plaintiff's arguments thus rely on hypotheticals that are inapplicable to her because she does not allege facts to show that she suffered those alleged injuries herself. But plaintiff cannot remedy her lack of standing by bootstrapping the hypothetical claims of putative class members. See Warth v. Seldin, 422 U.S. 490, 502 (1975) (holding that a putative class action plaintiff cannot manufacture an injury by relying on the purported injuries "suffered by other, unidentified members of [a] class").

Second, even assuming plaintiff had alleged that she browsed or purchased prescription eyewear or sunglasses, the Court is unpersuaded that those allegations, without more, would establish an invasion of a sufficiently private interest. Notably, although the complaint alleges that the Third Parties intercepted information regarding customers' lens selections, including selections labeled "prescription," it does not allege that the Third Parties intercepted the contents of any actual eyeglass prescription. See Compl. ¶¶ 54-89. Instead, the alleged transmissions principally concern product categories, lens filters, frame selections, and other shopping activity. Id. Moreover, the

[2] In fact, plaintiff does not describe at all what type of eyewear she purchased through DIFF, which sells both "prescription and non-prescription eyeglasses, as well as sunglasses." See generally Compl.; id. ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-05478-CAS-AYPx | Date | October 19, 2026 |
| Title | Carol Jackson v. Diff, LLC | | |

mere fact that these products may serve a medical or health-related purpose is not enough. See Magliocca v. United Healthcare Servs., Inc., 2026 WL 878694, at *3 (E.D. Cal. Mar. 31, 2026) (finding that use of tracking technology to disclose plaintiff's browsing for "health insurance products" does not constitute a concrete harm).

The Court therefore concludes that plaintiff's allegations do not establish the concrete injury required for Article III standing.

**B. Failure to State a Claim**

Because the Court has determined that plaintiff fails to allege facts sufficient to establish her standing, the Court does not reach DIFF's alternative arguments for dismissal pursuant to Rule 12(b)(6).

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** DIFF's motion to dismiss plaintiff's Complaint, with leave to amend. Plaintiff shall file a first amended complaint, if any, within fourteen (14) days of this order.

IT IS SO ORDERED.

00 : 12

Initials of Preparer CMJ